Timothy F. Kelley, Administrator, *vs.* Daniel F. Killourey.

Second Judicial District, Norwich, October Term, 1908.
Baldwin, C. J., Hall, Prentice, Thayer and Roraback, Js.

Statutes unrestricted in terms are not infrequently construed to admit of implied exceptions.

One who wilfully, persistently and knowingly irritates, hurts, tortures and provokes a dog until it retaliates and bites him, cannot recover damages therefor, notwithstanding the unrestrained language of General Statutes, § 4487, which declares that the owner or keeper of a dog shall be liable for any damage done by him to person or property.

A charge which is sufficient to guide the jury aright in the situation before them—even if not in all respects a complete and exhaustive statement of the law applicable to all possible conditions—is all that can fairly be required of the trial court.

Argued October 20th—decided October 29th, 1908.

Action to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the bite of a dog owned by the defendant, brought to the Superior Court in New London County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

The answer contained the general denial, and a special defense alleging, in substance, that the intestate's injuries were received in consequence of his treatment of the dog, in that he was, at the time, wrongfully, wilfully and persistently annoying, hurting, torturing and provoking it, whereby it was angered and incited to bite.

*Donald G. Perkins,* for the appellant (plaintiff).

*Gardiner Greene* and *Jeremiah J. Desmond,* for the appellee (defendant).

PRENTICE, J. It was a conceded fact that the plaintiff's intestate was bitten by a dog owned and kept by the defendant. Relying upon § 4487 of the General Statutes, the plaintiff requested the court to instruct the jury, in substance, that upon that state of facts alone, and altogether regardless of any conduct on the intestate's part which was instrumental in his being bitten, the plaintiff was entitled to a verdict for the resulting damage; and also that the defendant could not avail himself of any defense of contributory negligence on the intestate's part. The latter request was complied with; the former was not. On the contrary, the jury were told that certain conduct of the intestate inducing the act of the dog would be a bar to the plaintiff's recovery.

The statute in question is general in its terms, embodies no exceptions, and, when interpreted literally, furnishes justification for the plaintiff's contention that it renders an owner or keeper of a dog liable for all damage done under any circumstances by it to the body or property of any person. Such, however, is not its true intent and meaning. The letter of a law is not in all cases a correct guide to the true sense of the lawmaker. Statutes general in their terms are frequently construed to admit implied exceptions. *Ryegate* v. *Wardsboro,* 30 Vt. 746;

*State* v. *Audrette*, 81 Vt. ·400, 70 Atl. 833; *Church of the Holy Trinity* v. *United States*, 143 U. S. 457, 12 Sup. Ct. Rep. 511. So statutes defining the liability of owners or keepers for the acts of dogs, and couched in unrestricted language similar to that employed in the one under review, have been repeatedly held to embody implied limitations. *Plumley* v. *Birge*, 124 Mass. 57, 58; *Quimby* v. *Woodbury*, 63 N. H. 370, 374; *Peck* v. *Williams*, 24 R. I. 583, 587, 54 Atl. 381. The first two of these cases admit the defense of contributory negligence. We have not gone so far. *Woolf* v. *Chalker*, 31 Conn. 121. But that very case observed that the unrestricted language of the statute was not to be interpreted as admitting of no exceptions, so that the owner of a dog who had done efficient service for his master in protecting his premises against the perpetration of a felony would be liable to the felon for the consequences to the latter's person. The long-existing rights incident to such a situation were recognized as creating an implied limitation upon the operation of the statute, which in the literal interpretation of its terms took away those rights in so far as the agency of a dog was concerned. This same case recognizes scarcely less distinctly the necessity for another and more pertinent exception; for, after quoting a statement of Lord Denman in *May* v. *Burdett*, 9 Ad. & El. (N. S.) 101, our court adds: "and it would seem that if the plaintiff have knowledge of the ferocity of the animal, and provoke him wilfully, he should be considered to have purposely brought the injury on himself, and be left to bear it, although the owner of the dog be in the wrong in keeping him." Here is stated, with approval, the central idea of a principle which has had frequent acceptation and is founded in sound reason. *Peck* v. *Williams*, 24 R. I. 583, 587, 54 Atl. 381; *Muller* v. *McKesson*, 73 N. Y. 195, 201; *Fake* v. *Addicks*, 45 Minn. 37, 39, 47 N. W. 450; *Brooks* v. *Taylor*, 65 Mich. 208, 211, 31 N. W. 837; *Ilott* v. *Wilkes*, 3 B. & Ald. 304, 308, 316. The principle is that

when one's conduct toward a dog or other animal is knowingly such as is calculated to incite or provoke it to acts of damage, its naturally resulting action, in so far as it involves consequences to the inciter or provoker, is to be regarded in law as his and not having reference to the animal in such manner as to be chargeable to its owner or keeper; and that in respect to knowledge of the natural consequences of his acts, he will be presumed to possess such as is common to ordinary rational persons.

In the present case the court, having told the jury that the defendant could not avail himself of the defense of contributory negligence, as that principle is applied in negligence cases, so that the plaintiff would be entitled to recover notwithstanding any negligent conduct in relation to the dog on the intestate's part, proceeded to say that the second defense set up something more than contributory negligence and embodied a sufficient defense to the action, to wit: that the intestate's injuries were due to his own wilful and intentional misconduct—to the wrongful and wilful provocation of the dog. Commenting upon the statute, it was said that it ought not to be so construed as to authorize a recovery against the owner or keeper in every case where damage results from the acts of a dog. Then followed this language: "No one under it ought to be permitted to recover damages for an injury brought upon himself by his own wilful and wrongful provocation of a dog. Such misconduct ought to bar his right to recover, and in my judgment does, as a matter of law. Any injury from a dog bite voluntarily brought upon one's self while one is engaged in an unlawful act, cannot support a recovery. This is not to deny the force of the statute, but to exclude from its remedy one who is engaged in a wrongful, or wilful and unlawful act. Wilful in that connection means intentional, purposely, knowingly. It is unnecessary to discuss at length the ground of such a conclusion; it is sufficient for your purpose to state it.

If you find the facts proven by the defendant, by a fair preponderance of the evidence as set forth in the second defense, the plaintiff is not entitled to recover and your verdict should be in favor of the defendant." And later: "It is not, as you have noticed, gentlemen, a provocation that may result, or an injury that may follow, from a mere accident, as stepping upon the dog's tail, or might occur from negligence in playing or fooling with the dog; it must be this wilful and wrongful conduct as set forth in this second defense. Provocation must follow from that, and the consequent biting and injury must follow from that."

If this language were presented as an attempt to formulate a broad and comprehensive statement, in the abstract, of the law as applicable to all situations, it would be open to criticism. It would be easy, for instance, to criticise, as the plaintiff has done, the broad statement that the remedy of the statute is to be denied to one who is injured while engaged in a wrongful or wilful and unlawful act. And so the language quoted would be inadequate as a precise statement of abstract principles, in that it did not expressly embody the controlling condition that the action of the man which proved to be provocative of the conduct of the dog should be such as was in fact calculated to cause that provocation, and was known to him, either actually or as an unrebutted presumption from common knowledge, to be so. But the court was dealing with a concrete situation and endeavoring to give to the jury intelligent rules for their guidance in respect to that situation. The only unlawful act of which the deceased could, under the facts· as claimed by either party, have been guilty, consisted of maltreatment of the dog, and the pronounced character of that maltreatment, in order that it amount to a good defense, as stated to the jury not only in the passages quoted but in others commenting upon testimony, was such that the conditions which the law attaches to a valid defense were necessarily implied in them. They

were told that "fooling with the dog," or spitting in front of its face, as witnesses testified was the deceased's conduct, was not sufficient, and thrice at least were told that the defendant could only justify by proof of the facts set up in the second defense, to wit (as stated by the court in its instructions), that the deceased wrongfully, wilfully, and persistently annoyed, hurt, tortured and provoked the dog, and that the dog bit him in consequence thereof. Such facts involved wilful abuse of the dog, and abuse of such a character as, to the knowledge of every man of ordinary intelligence, be he the actor or a juryman, and as a matter of judicial knowledge, would be calculated to rouse a dog to defensive action by the use of its natural weapons of defense. The plaintiff could not have been harmed by the charge as given.

There is no error.

In this opinion the other judges concurred.